The next matter is the United States v. Michael Lowery May it please the Court, I represent Appellant Michael Lowery With the Court's permission, I'd like to reserve four minutes for rebuttal The District Court here upwardly varied to impose a ten-year sentence which was four years longer than what the government had requested and seven-and-a-half to eight years longer than what the advisory guideline range had requested And he did so by relying exclusively on Mr. Lowery's criminal history The sentence was procedurally and substantively unreasonable because the explanation given by the District Court was both inadequate and inaccurate Excuse me, we're having a little trouble hearing you Hello? Can you hear better now? Oh, okay Did you want me to repeat anything or should I? No, you're fine now Okay, I'll try to speak up Let me ask just a back question at the outset On one of the prior convictions, Mr. Lowery received a three-to-six-year term and it looks like he served three years of that three-to-six-year term, is that correct? Yes, about three years And, okay, I wanted to clarify that If we're talking about that fact, I could be a little more specific The Court adopted the pre-sentence report  and relies on the fact that he says Mr. Lowery's criminal history would undoubtedly be much worse had he not been incarcerated for most of his adult life And he's relying on this idea that he serves a six-year term of incarceration He'd been an adult for nine years If you look at the pre-sentence report, it indicates that he got a three-to-six-year term of imprisonment when he was 18 years old, but he's got out at or around the minimum three years Four months later, he's picked up for possession of an amount consistent with personal use He gets three to 23 months We don't know how long he served of that term The pre-sentence report doesn't indicate he did any more than three months And it also doesn't indicate that there was probation revocations We know that he couldn't have done a full six years because of another arrest that occurred in 2008 It makes it impossible that he could have done a six-year term So when the court is saying he served a six-year term of incarceration to no avail and therefore a substantially longer period is required here to deter him that fact-finding is clearly erroneous because the pre-sentence report suggests he did about three years It seemed like there was something else later that he acknowledged that it may not have been six years There's a place where it sounds like six years and another place where it sounds like he realized it wasn't six years At first, he says he got out at about the minimum And then four months later, he went back in And then later, the judge twice said he served a six-year term of imprisonment to no avail And I think that's on paper Obviously, this is a very significant variance upwards as you note, far more than even the government has for it But it would seem that the best argument that you have is that there is no mention of the sentencing disparity issue The problem that you have is that it doesn't appear that that was brought up at all by counsel for Mr. Lowry Actually, it was preserved in really three different ways throughout trial I think we all agree I'm sorry, at the sentencing I think we all can agree that, yes, you have to preserve an issue to avoid plain-air review The question is, how do you preserve it? And Negroni – I'm sorry, Seville and Greer teach that you preserve an objection to the reasonableness of a sentence by raising a meritorious legal or factual point related to Did counsel bring up that, Your Honor, you need to take a look at how other sentences have happened with regard to persons having these types of convictions? He absolutely did, again, in three ways The first was that he asked for a within-guidelines sentence, and I'll explain that in a minute But the more obvious way was when he asked the court to impose – he said to the court, Mr. Lowry is a Category 3 offender He's a typical Category 3 offender And you should sentence him to other similarly-situated Category 3 offenders To the extent you think he's worse, maybe you could go to Category 4 But certainly there's nothing in his record that suggests more than double the Category 3 range And what is that but a recognition of disparity, which is a call to the judge to sentence similarly-situated defendants similarly And so what Mr. Hackney was saying, particularly by requesting a guideline sentence, was he is a mine-run Category 3 offender who committed a mine-run offense And the guidelines here, Category 3, accounts for his criminal history access So you're saying sort of impliably that he argued unwarranted sentencing disparity? It's more than impliably. The facts are, according to – Ms. Presley would say, Your Honor, you need to take a look at 3553A6 The only thing missing was – I don't know of any case that supports a sentence beyond, for example, if this is 24 to 30, I don't know of any case that supports anything beyond 15, offense level 3, let's go to 15.4 And that would give you, what, 31 to 37? So whatever it is, that's it. But I don't see that being made. The only thing missing was the word disparity, and this Court has never required magic words. What Sevilla and Greer say is if you're raising a fact or a legal issue that relates to one of the 3553A factors, then the reasonableness of the sentence is preserved. And I'd point out that in FUMO – well, first I should say Goff and Negroni are the best cases for us. Exactly – Negroni went the other way. I don't mean the result. I mean in terms of preservation. The government in those cases asked for a guideline sentence recognizing that the guidelines, according – are the commission's best estimate of a reasonable application of the 3553A factors, one of which is disparity. The Court buried in each of those cases substantially below the guidelines. Didn't Negroni and I guess Friedman as well, didn't they involve issues relating to the sentence given to co-defendants? No. Well, I can say Goff, definitely no. The co-defendants – No, I was asking about Negroni and Friedman. Friedman – I thought they were involved with the co-defendants. Friedman, there was a reference to what the co-defendants thought. Negroni, however, the factor that the Court was looking at – and I can pull it up here. The government had sought the 70-month-within guideline sentence in the Court and posed probation. And if you look at the brief filed by the government in that case, they said they preserved their objection to the failure to consider disparity to the reasonableness of the sentence simply by arguing a within-guideline sentence was sufficient but not greater than necessary. And what the Court said was when the guidelines call for a sentence and the sentence is so far different from the guidelines range, disparity is necessarily implicated and the Court has to give particularized attention to disparity. That was the key. And in Fumo, I would point out that the majority there, the issue was did the Court err by after granting a downward departure failing to set the guidelines range post-departure before going into the 35-50-day practice. And the government there said that the argument was preserved – their challenge to the Court's error in that regard was preserved simply because during argument they had set forth the Gunter three-step time. There was no contemporaneous objection to the Court's error at that moment. And the Court did review for abuse of discretion. Judge Nygaard in his concurring and dissenting opinion actually put the government to task a bit for advocating plain error when they're the avalee and advocating an abuse of discretion when they're the avalente. The defense counsel here did much more than the government did in Fumo and did at least as much as the government did in Sevilla, that is. He asked for a within-guideline sentence, which is a recognition of disparity. This is a Category 3 case and should be sentenced within Category 3. In this case, let's assume for the moment it was brought up. And let's assume for the moment that we say that there was no dealing by the Court at all with 35-50-day practice. The best you can hope for is to go back to resentencing. And then when you look at the transcript of the sentencing itself, it was pretty clear that the judge here was looking at this person's record, this person's, quote, affordability, close quote, this person's recidivism, and he would be – one would make a pretty serious bet at Vegas or Atlantic City that the same sentence was going to be given the next time. I mean, of course, I respectfully disagree. If you don't think the judge would do the same sentences. I really don't. And one of the reasons is I think that if the Court actually had to look – we know that procedural error can lead to substantive error, and that's what happens here. If the Court actually had to look at disparity and said, hey, the worst offender in Category 6, the worst recidivist in Category 6 committing the same crime would have gotten 41 to 51 months, and I gave him double that. Double plus. I think that that would have given him pause. The government was relying on an uncharged crime and the recidivism to say that 72 was sufficient, but not greater than that he said. And defense counsel, I forgot to mention the third way in which he preserved this issue, and that was after sentencing he said to the judge, your sentence is unreasonable and it's not supported by adequate explanation, meaning why is he double the guidelines range when really there's nothing in his criminal history category to suggest that he's that kind of offender? He specifically said he did not rely on it. And the other point that I would make is I believe it's substantially reasonable as well, but of course this Court has to address the procedure before we get to this other point. And I think that at a resentencing what would happen is we would point out to the Court it's clearly erroneous fact finding. The facts that it relied on, which is that the juvenile record demonstrates incorrigibility and not the adult record, which consisted of one PWID and one possession of a personal use amount, they don't reflect the kind of incorrigibility that the judge suggested. And that's a longer sentence. Criminal, the current research is that longer sentences don't promote the term. The current research. Thank you very much. May it please the Court, Laura Irwin on behalf of the government. Your Honors, I'm going to throw caution to the wind and jump right in, away from my prepared statements to talk about disparity in this case and the issue of whether or not the defendant actually preserved that issue. The argument that I've heard today is not one that was put forward in the briefs, and I don't think it's one that can be sustained on the current record. Keep in mind the procedural history of this case. The PSR was prepared. There were no objections by either side. Even if it was plain error, I mean, review, one could make a pretty good argument that this was an error, that it was pretty plain, and that it did affect substantive rights of the defendant. As your opposing counsel notes, that even if there had been offense level 15, category 6, as opposed to category 3, it would have been 41-51-9. With all due respect, Your Honor, I have to disagree. If you look at the district court statements in this case, it is implicit in this statement that he considered this individual to not give rise to unwarranted disparity, keeping in mind that that's what we're considering. Where did he say that? If you look at his statements, it's page 47-50 in the appendix. He goes through and talks about each of the prior offenses of the defendant. If you parallel those to the PSR, you see that each time this defendant is involved with more drugs, more serious drugs, he moves on to crack cocaine, to heroin, to the point where he's ultimately caught in this case with 18 bricks of heroin. That's what he pled to at the change of plea. 17 is reported in the PSR. Where are 47-50? What are you quoting? Of the appendix is the district court statement of reasons. I've got it. I've got it in front of me. Where is he in there? Is he talking about disparity? It's true. He did not use the word disparity. Where in there is he talking around the word disparity? Because he goes through step-by-step and takes you through each offense of this defendant to show you each time. Why don't you point me to the language there? Okay. He states on page 47, since 1999, engaged in serious. . . What line are you? You know, I think. . . I don't have the line. Toward the bottom? I think so. The court finds. . . Since 1999 is what you're saying? Right. The defendant has engaged. In serious criminal activity. Beginning. . . The next paragraph. Beginning at age 15, adjudicated delinquent for a drug trafficking offense. According to the PSR, that was 26 pieces of crack. The next paragraph, a year later at the age of 16. That's 13 pieces of crack. Go on to the next. . . That's all. . . That's all as a juvenile. Right. And he keeps. . . If you go to page 48, he continues to go through those. Incredibly, this was followed a year later. That offense involved heroin, marijuana, ecstasy. . . Each time he was incarcerated or confined for a significant period. Now, juvenile. . . To what extent could he take that into account? Well, it's true that he could not count them because they weren't counted in the criminal history category. But he can look at those in terms of recidivism. Okay. But what does that have to do with unwarranted sentencing? Because as he goes through, he finally gets to the end of the page on page 48. This is a case study in recidivism. And if you look at that, he continues to say, this had no effect on defendant's behavior. When he describes him as a case study, that's the paradigm. That is the outlier. That is someone who there is not going to be unwarranted disparity because this defendant. . . You know, in effect, he's incorrigible. But where is it that other people who have this type of recidivism are sentenced to, for this crime, to 120 months as opposed to something far less? Well, it's true, Your Honor. Those words are not in there. This Court's never required magic words. And our position would be, by describing this individual as a case study. . . I agree that you don't have to have magic words. But honestly, I don't see any discussion of 35 to 60 years. Any. Well, again, I'm not going to deny that those words are not in there. But I think taken in total, his statement, which is, again, reflected in his written statement, reflects an implicit consideration. And we all know that implicit consideration is permitted. And I would point out, Your Honor, I realize that we're taking this argument as if they did preserve it. But keep in mind, we filed our motion saying we were going to move for an upward variance of at least 72 months. The defendant responded, never used, as far as I'm concerned . . . Upward variance to 72 months. To at least 72 months. Okay? The defendant filed a response and said, my past is small time, street-level drugs. Don't consider it. It's not enough. And the judge didn't buy it. But all I'm saying is that when you compare this . . . Part of the thing is, for the sentencing guidelines, we're trying to get a bit of uniformity into the system of that value study. So that you have these sentencing ranges based on offense level and the past history of the person. And your opposing counsel is saying that even if the past history was . . . Even if you took the juvenile conviction and you treated them as if they were adult convictions, the worst that you could get is level 6. And offense level 3, with criminal history level 6, gets you 41 to 51 months. And we went two times plus over that. That's true, Your Honor. My response to that is, that's looking at it from the position of the guidelines. That's step 1 and 2 of Gunter. That leaves us with step 3. And this Court has repeatedly, as recently as Larkin, emphasized the importance of an independent judicial opinion. You're absolutely right. But at step 3, you've got to go through and consider, or at least give us some indication that you have considered. And if you haven't, the case that might be most on point would be our Osborne, A-U-S-B-U-R-N case. And that's where I was going next. Because the difficulty I have with saying this issue was raised, well, actually, even if it was raised, the burden was on the defendant to come forward with some evidence to show that there are comparable cases out there. That's what happened in Osborne. The federal public defender went to the district court at the original sentencing and said, compare me to these guys and tell me why I'm different. And the district court didn't do it. And there was a huge variance upward. This court reversed and said, go back and do it again. You have to make the effort. You have to do it. And he did do it, and he re-sentenced him the same amount. In this case, had he even raised this issue, it was his burden to come forward and show cases so the judge could say, I hear you and I'm addressing your issue. And how do you address the point that your co-counsel is making, where counsel said, okay, let's assume for the moment it's not criminal history level 3. Let's assume it's 4. Even there, it doesn't even get anywhere near to what the government was suggesting with the 72 months. Well, again, the government was saying at least 72 months. And my response would be we cannot be so firmly tethered to what the guidelines tell us. That's why there's step 3. That's why the district court recognized what the import of Booker. The Supreme Court has told us it has to be an individualized sentence. What we have is in assessing the rights, at step 3, there's a tremendous amount of discretion given to the sentencing judge. But for us to review a sentence for being reasonable, you have to make sure that certain bases are touched. One of those bases is what other people in similar situations have been given as sentences, and that's not touched here. With all due respect, Your Honor, I'm not sure that there is a mandate that each of the 3553A factors must be addressed. No, the mandate is that whatever is relevant, and this one happens to be relevant. But it wasn't raised by the defendant. And even if it was, this court made it clear. It certainly wasn't raised expressly. I can see it. There's no doubt about it. It's our position that the district court recognized that there were other people out there, but this individual was a case study in recidivism. He went through step by step with each offense to explain why these prior sentences had not been enough to deter him. He had given, he had received, the defendant had received a three- to six-month sentence, which is the same as 72 months, which is the same we asked for, and the district court said even that, the prospect of a six-year sentence, and we agree he didn't serve the entire time, but it's the prospect, it's the announced sentence of the day of sentencing that the defendant hears and should be remedied, that should have some effect on the defendant. Even that wasn't enough. So in this case, I'm going up to 120 months. It's well below the statutory maximum. I think it is. When you look at the totality of the district court's statement at pages 47 to 50, he does at one point talk about a six-year sentence, but he says three to six years at other points. And keep in mind, under the guidelines, when you count criminal history, you look at the sentence articulated the day of sentencing. You don't actually look at time served. So I think given that kind of history of how you deal with sentences, it makes sense that the district court described it in those terms. Are there any other questions? Thank you. This court has repeatedly said that the explanation the court gives is just as important as the fact that it considers the 3553A factors. Negroni and Goff say that if a judge varies this substantially from the guidelines, disparity is necessarily implicated, and the court's required to give particularized consideration to that factor, and that wasn't done here. This issue was preserved, although I would submit first and foremost because the defense counsel asked for a guideline sentence. And by asking for a guideline sentence, he's recognizing that SRA was enacted primarily to eliminate sentencing disparity in Congress. That's a tough argument. But that's exactly the argument. It's so simple just to say, look at this person, look at that person, and maybe it's a – that wasn't done by counsel here. I don't think counsel had done – That was the specific thing done in Osborne, but the law does not require you to compare two specific defendants in order to preserve disparity. No, but that's how you – that's the best way to make the argument. In other words, I'm going to show you these exemplars, and these people have got this and this and this. You're now going way outside the ballpark. Our exemplar is that he's a criminal history category three defendant. He's similarly situated to other criminal history category three defendants. There's nothing about him that makes him worse. Let's assume for the moment we don't buy the argument that was made. Was there a plain error here? Yes. Even under a plain error standard, we would have to prevail. That's the alternative holding. I say that lightly. In FUMO, the inadequate explanation defeats the public review.  But where the extent of the variance necessarily implicates the disparity, he's required to consider. But when you have a plain error review, as I mentioned this morning, the three elements that are often given to effect the report, an error has to be plain, has to affect the standard of the rights of the defendant, but also which, if not rectified, would seriously affect the fairness, integrity, or public reputation of judicial proceedings. And it does so here because the purposes for an explanation are not just so that the defendant understands what's going on. It's a window into the sentencing procedure. It facilitates this court's review to ensure that the district court did the statutory obligation of considering and then explaining the 3553A factors. And here you can't consider either the procedural reasonableness or the substantive reasonableness of the sentence because the explanation is woefully inadequate, I would submit, to support an eight-year variance from the guidelines range in a mind-run case. I just want to say that. In effect, is it a mind-run case when you have fired 18 for convictions, and I realize I'm not supposed to include those in the PSR calculation, and you have one very significant sentence, post-18, plus this one, and it looks as if for a young person like this, the word incorrigible might be a pretty good description. Putting aside the juvenile adjudication for one moment, I don't agree that it's incorrigible. This is indicative of a young man with substantive abuse problems. I would say that the only thing significant about his record is the complete absence of any violence and any gun use in this case. It was about 26, 27 grams of heroin. But it's a controlled buy, and there's no indication in the record who determined the type or amount of drugs. So again, to rely on this escalation in type and quantity isn't really fair in this case, where it is a controlled buy and there's no evidence that he was the one that set the amount or the type of drugs. The other thing I would point out is that the purpose of preservation is to put the court on notice. Clearly, the court's on notice of his obligation to consider the 3552A factors, both because of his argument, defense counsel made, that this is a mind-run case, and because of the statute. The issue was preserved. He did way more than the government did in FUMO, and there the majority held that the issue was preserved and it was reviewed for plain error. Thank you.